INHABITANTS OF BETHEL *vs.* INHABITANTS OF ALBANY *et als.*

Oxford, 1875.—February 26, 1876.

*Town—disputed lines.*

The decision of commissioners (appointed under R. S., c. 3, § 43,) in ascertaining, determining and marking upon the face of the earth the common line between towns, is conclusive.

By § 44, the compensation of the commissioners is to be apportioned "in equal proportion," upon the petitioners and respondents as parties, irrespective of the number of towns in either party.

On exceptions.

Petition under R. S., c. 3, § 43, for the appointment of commissioners to determine a disputed line between the petitioning town of Bethel on the north, and the respondent towns of Albany, Greenwood and Woodstock on the south.

At the September term, 1873, Samuel F. Perley, Rufus Prince and Augustus H. Walker were appointed commissioners, who, on due proceedings had, returned their report at the September term, 1874, describing the line and stating the costs of the commission at $718.25.

The petitioners objected to the acceptance of the report on the ground that the commissioners' line, not being straight, was not the line established by the act incorporating Bethel, approved June 10, 1796. But the presiding justice overruled the objection, ordered the report accepted, and a warrant of distress to issue against Bethel for one-half of the costs of commission. The petitioners alleged exceptions.

*R. A. Frye,* for the petitioners.

*A. S. Kimball,* for the respondents.

Virgin, J. The petitioners allege exceptions, I. To the refusal of the presiding justice to reject the report of the commissioners; and II. To his order requiring the petitioners to pay one-half of the commissioners' costs.

I. Towns are created and their territorial limits defined by the legislature alone, and no other authority can change them. *Westbrook* v. *Deering,* 63 Maine, 231. *Ham* v. *Sawyer,* 38 Maine, 37. When the precise locality of the common limit between adjoining towns is, from any cause, so involved in doubt as to become the subject of a controversy among them, the statute has provided a tribunal and conferred upon it exclusive authority to settle it. Its authority is limited to ascertaining and determining and marking upon the face of the earth the line described in the charter; and such line when thus ascertained and marked "shall be deemed in every court of law and for every purpose the true dividing line between such towns." R. S., c. 3, § 43. *Lisbon* v. *Bowdoin,* 53 Maine, 324.

The statute does not require any revision of the report or other action thereon, on the part of the court. And when their report shows that the commissioners have really tried to perform their duty as defined in the statute, there would seem to be no power to reject it simply because it may be possible that they may have erred in judgment in ascertaining the true line. *Lisbon* v. *Bowdoin*, supra.

We will add, however, in this connection, that it does not affirmatively appear that any mistake has been made in this case. The only evidence relied upon by the petitioners on which they base their allegations of error in the line designated by the commissioners, is a copy of the original act of incorporation of the town of Bethel, passed in 1796, which describes the line in controversy as commencing at a "hemlock tree marked III; thence east twenty degrees north, nine miles, on Oxford and State's land, to a beech tree marked I." Whereas the line ascertained and described by the commissioners has four different courses, deflecting in the whole one degree and fifty minutes from a straight line. This evidence does not necessarily show error.

It is true that where two termini of a line between towns are established, and no intermediate conflicting point is indicated in the description, the line will be deemed to be a straight one. *Henniker* v. *Hopkinton*, 18 N. H., 98. But any intermediate monument outside of the straight line, being more certain than the course, will govern it. In the line in question, "on Oxford and State's land" is an intermediate monument between the "hemlock" and "beech" trees. Whether it is in or outside of a straight line drawn between them, we have no means of knowing. The commissioners declare, however, that they "have ascertained and determined" the line described and marked by them "to be the true dividing line between said towns," &c. And from their well known experience and legal knowledge we presume that to the facts as they found them evidenced by ancient marks upon the face of the earth, they applied the well settled principle of law, that where the line described in a deed or charter, and that indicated by monuments established in the original survey and location of the tract or township, do not correspond, the latter, being the best

evidence of the true line, must govern, however they may differ. *Brown* v. *Gay*, 3 Greenl., 126. *Ripley* v. *Berry*, 5 Greenl., 24. *Esmond* v. *Tarbox*, 7 Greenl., 61. *Cate* v. *Thayer*, 3 Greenl., 71. *Williams* v. *Spaulding*, 29 Maine, 112. *Kellogg* v. *Smith*, 7 Cush., 375. *Missouri* v. *Iowa*, 7 How., 660.

II. By R. S., c. 3, § 44, the court is authorized to allow the commissioners a proper compensation, and to issue a warrant of distress for its collection "of said towns in equal proportion." "Said towns" relate to the two towns ·mentioned in § 43,—the "town petitioning" and "an adjoining town;" only two being contemplated. This is made certain by the original statute of 1832, c. 43, § 2, the latter clause of which is, "and the court may issue a warrant of distress for the collection of one-half of the same of the petitioning town and the other half of the other town interested." In other words, the compensation of the commissioners is to be apportioned "in equal proportions" upon the two parties irrespective of the number of towns.     *Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.